## PARNELL vs. COMM'RS' COURT OF DALLAS CO.

[PROCEEDING FOR ESTABLISHMENT OF PUBLIC ROAD.]

1. *Who may resist establishment of public road.*—A person who lives within such a distance of a public road, as established under an order of the commissioners' court, that he or his slaves may be compelled to work on it, has not such an interest as authorizes him to sue out a *certiqrari*, for the purpose of revising the proceedings of the commissioners' court before an appellate tribunal.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. NAT. COOK.

THE record in this case shows these facts: On the application of Elijah Bell and others, for the establishment of a public road in said county of Dallas, the commissioners' court of said county, at its May term, 1858, appointed a jury "to view and mark out" the proposed road. On the 14th June following, in vacation, the jury returned their report to the court. On the 21st June, the court appointed an overseer, and directed him to open the road. The overseer thus appointed proceeded to open the road, summoned the persons liable to road duty to assist in opening it, and returned as defaulters those who failed to obey the summons. At the August term of the court, the jury appointed at the May term, as above stated, made another report of their action in marking out the road. At the same time, John Parnell appeared before the court, and asked leave to contest the validity of the proceedings; and, in support of his right to contest the proceedings, proved to the court, that he was a resident citizen of the county, and lived within three miles of the proposed road; that he owned slaves who were liable to road duty, and had been warned to assist in opening the new road, and had been returned as a defaulter for refusing to obey the summons. The court refused to allow said Parnell to appear as contestant, and also overruled each of the several motions made by him attacking the validity of the proceedings; to each of which decisions exceptions were reserved by him. Parnell then presented his petition to the Hon. Nathan Cook, asking a *certiorari* to revise the proceedings of said commissioners' court; alleging, in proof of his interest and consequent right to contest the proceedings, the facts above stated; and appending a transcript of the proceedings had before the commissioners' court, as an exhibit to his petition. The circuit judge at chambers granted the *certiorari*; but afterwards, during term time, dismissed the *certiorari*, "on the ground that said Parnell had no right to intervene and object to the establishment of said road." To this ruling of the circuit court the petitioner excepted, and he now assigns it as error.

GEO. W. GAYLE, for the appellant.

PETTUS, PEGUES & DAWSON, contra.

A. J. WALKER, C. J.—The appellant asserts the proposition, that any one owning slaves, who lives so near the route of a contemplated road that his slaves might be called out to work upon the same, may, by certiorari, obtain the revision of an order establishing a public road. If the liability of slaves to work upon a road gives the owner such an interest that he may sue out a certiorari in the matter of the establishment of a public road, certainly a man residing within such distance as to be liable to be called to work upon a road might also sue out a certiorari; for a man's own time and labor may as justly claim protection from an erroneous order of the court of county commissioners, as the time and labor of slaves. It must be, therefore, that if the owner of slaves may, in such a case, sue out a certiordri, any person residing within such a distance that he may be required to work upon the road, may also sue out a certiorari. We may, therefore, treat the proposition as if it claimed the privilege of assailing the order for every one who might himself be required to work upon the road, or who had slaves that might be required to do so. If the proposition is correct, every person liable to road duty, who resides within six miles of any part of the road, or has slaves within that distance, might sue out the certiorari.—Code, § 1141. There would thus be, whenever a road is established or changed in a populous region, a large number of persons having an equal right to contest the order in a revising tribunal, and, of course, to resist the application for it in the primary court. The inconvenience, confusion and delay in the proceeding, involving as it usually does a matter of public interest, which might result from the allowance to so large a number of persons of the privilege of being parties, argues strongly against the expediency of the rule, which the maintenance of the appellant's proposition would establish.

Unless an interest in the question of the establishment of a road is a consequence of a residence within the pre-

scribed distance, by one liable to road duty, he ought not to have a right to become a party to the proceeding. Now every person not exempted *may* be required to work upon a public road within six miles of his residence; yet it does not follow that he *must* be required to do so. One liable to road duty may live within six, or (as did the appellant) within three miles of a public road, and never be required to work upon it, or to send his slaves to work upon it. The law does not exact that a man shall work upon every road within six miles of him, but upon the road to which he may be apportioned by the apportioners; provided that he shall not be required to work upon a road, every part of which is more than six miles from his residence. A man may, therefore, reside less than three miles from a contemplated road, and yet he may be required to work upon some other road within six miles of him, and may never be called upon to furnish his own time and labor, or the time and labor of his slaves, in the improvement or opening of the road in question. All that can be said is, that he may possibly or probably be called upon to work it; and that, therefore, he has a possible or probable interest. If the route of the proposed road would be nearer to him than any other, then the probability of his being called to work upon the road would be increased, for the Code directs that all persons shall be apportioned to the road nearest them, if it can be done consistently with the public interest.—Code, §1157.

If this probable interest would entitle one to sue out a *certiorari* to obtain a reversal of an order in reference to a road, then he would have the same right in reference to every road, a part of which might be within six miles of him. Suppose, then, there should be applications to change three different public roads, all within six miles of the same person. He might, upon the proposition of the appellant, become a contesting party in all the applications, although he would not probably ever be called to work upon each one of the roads.

If we hold that such an interest gives a right of contestation, where will we draw the line which excludes

persons from the right ?    One whose fixed and permanent
business requires him to constantly pass with stages or
loaded wagons over the road, has a more certain, and per-
haps a greater interest in the quality and location of the
road, than he who may probably be called to work upon
it a few days each year.    Upon what principle, if one may
be a party, shall the other be excluded?    There is no
such principle.    All such interests fall in the category of
those pertaining to many members of the community,
which must be more or less affected by the action of the
commissioners' court in reference to roads, and which
nevertheless do not give a right to become formal parties
on the record.

It is not to be apprehended that any serious injury can
result from a denial of the right to every one liable to
road duty to become parties to the record.    The court of
county commissioners is composed of members elected by
the people of the county; and in determining as to the
expediency of action in reference to the public roads, it
exercises a sort of legislative power, and has a wide dis-
cretion.—Hill v. Bridges, 6 Port. 197.    Thus elected by
the people, and unrestrained by rules of evidence in pass-
ing upon the merits of applications, there is no danger of
their refusing to listen to the petitions and arguments
which any of the people may present, and indeed it would
be improper for them to do so.    When the question of
expediency has been tried and determined, no public good
could result from opening the door for every discontented
man in the community to institute a search for some
irregularity in the proceeding, for which he might obtain
a reversal in a higher tribunal.

In the case of Moore v. Hancock, 11 Ala. 245, the atten-
tion seems to have been first drawn to the question now
before us; and in that case, the court, in reference to the
establishing and changing of public roads, said : "These
are matters of public concern, in which it can rarely hap-
pen that private interest is involved beyond the value of
the land over which the road passes; and it is possible it
is in this connection alone, that individuals have any right
to re-examine the decisions of that body, to which this

Parnell v. Commissioners' Court of Dallas County.

duty is entrusted." The same subject again came up before this court in Cresswell and Monette v. The Commissioners' Court, 24 Ala. 282, and the following language was used : " We hold, that the interest which will authorize any one to be made a party to these proceedings, must be an interest in property, something capable of individual ownership, and not a mere interest which the party holds in common with the rest of the community. It must relate to him separately as an individual proprietor, and exist as a private right, which he, as a private man, may vindicate by suit; for, if it be only a right which he holds in common with the rest of the community, it is a public right, and is not placed by the law in the keeping of any private individual." The mere liability to be called to work upon the road is not the interest here spoken of. It is when the action of the court will produce an interference with individual property, that the person affected may intervene. A liability of one, in common with the rest of the community, to be called to aid in repairing the road, does not so infringe or interfere with the property of an individual, that he may intervene.

A diligent examination of the decisions of other States has not enabled us to find any authority precisely in point upon the question, but we have found and cite several cases which contribute to support our argument.—Little v. May, 3 Hawkes, 599 ; Barr v. Stevens, 1 Bibb, 292; Cole & Chara v. Shannon, 1 J. J. Marsh. 218 ; Nicholson v. Stocket, Walker's (Miss.) R. 67.

We decide the proposition of the appellant, stated at the commencement of this opinion, against the appellant, and affirm the judgment of the court below.